THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT HOMER BLUMENSHINE, Defendant-Appellant.

Fourth District   No. 15273

Opinion filed June 15, 1979.

Costigan & Wollrab, of Bloomington (Paul R. Welch, of counsel), for appellant.

Ronald C. Dozier, State's Attorney, of Bloomington (Marc D. Towler and Karen L. Boyaris, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE REARDON delivered the opinion of the court:

Defendant, Robert H. Blumenshine, on July 13, 1977, was found not guilty by reason of insanity of the offense of murder. (Ill. Rev. Stat. 1975, ch. 38, par. 1005—2—4.) Defendant was ordered hospitalized in the custody of the Department of Mental Health and Developmental Disabilities. A hearing was held approximately one year later, to review the defendant's condition, and following a continuance of this proceeding, a petition for discharge was filed on behalf of the defendant pursuant to section 5—2—4 of the Unified Code of Corrections. (Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—4(e).) Following the presentation of evidentiary depositions at a hearing on September 29, 1978, the trial court denied the petition for discharge. The issue on appeal is whether the court's decision was against the clear and convincing weight of the evidence.

The evidence before the court consisted primarily of the testimony of two psychiatrists, Dr. Aravind K. Pai, who was involved directly in the treatment of the defendant, and Dr. Phillip E. Bornstein, a court-appointed psychiatrist. Dr. Pai testified that the defendant had originally been diagnosed by another psychiatrist as a schizophrenic, paranoid type. When he examined defendant in November 1977, he concluded that his psychosis was in remission. It was Dr. Pai's opinion that the defendant did not require further resident or in-patient treatment and that he should be discharged subject to continued periodic, follow-up treatment through a local mental health center. The appropriate local mental health facility had been contacted and had agreed to perform the necessary follow-up treatment.

The recommendation of release by Dr. Pai was premised on certain other conditions. First, he noted that alcohol abuse had been a contributing factor with regard to the hallucinations and delusions that the defendant had apparently experienced at the time of the killing. The defendant exhibited an awareness of this potential problem, had abstained from alcohol consumption during his hospitalization and was participating in an Alcoholic's Anonymous (A.A.) program. He recommended that defendant's release be subject to his continued participation in an A.A. or similar alcohol counseling program. Dr. Pai

also noted that defendant had remained off treatment-related medication for approximately 8 months without exhibiting any adverse physical or psychotic symptoms.

Dr. Pai also recommended that the defendant, if discharged, live with his mother. This condition would serve two purposes. The defendant, who wanted to return to his mother's farm, would then be able to engage in farming. Defendant's desire to take on this responsibility was, in Dr. Pai's opinion, also indicative of his recovery. The release of the defendant to the custody of his mother would further allow the mother to monitor the defendant's condition in conjunction with the local mental health center. No special training, according to Dr. Pai, would be required of the mother to be alerted to a recurrence of any psychotic behavior by the defendant. The third condition, as previously mentioned, was that the defendant continue out-patient treatment.

Dr. Pai in addition testified concerning the propensity for dangerousness of the defendant. From his observations and examinations of the defendant there was no indication of a relapse, although he admitted that defendant, during his hospitalization, had not been exposed to typical financial, family, or other everyday stress. However, he felt that the defendant had been subjected to stress in terms of his confinement and the supervision and regulations incident thereto. Defendant had responded well to these restrictions, was cooperative and had not exhibited violent behavior or loss of temper.

Dr. Pai further noted that the defendant's delusions and paranoid ideations had centered on the murder victim, who was the defendant's girlfriend. He had not demonstrated similar psychotic symptoms toward others or to the community generally.

Upon questioning by the court, Dr. Pai admitted that he could not guarantee that the defendant would not engage in violent or impulsive behavior sometime in the future. He further declined to make a percentage estimate concerning the defendant's likelihood of causing harm to another. He responded that it was impossible to categorically predict whether or not a particular individual would be dangerous in the future. He was, nevertheless, confident, based on his observations and clinical evaluations, that defendant was a nondangerous individual. Defendant had not exhibited the type of behavior indicative of a high propensity for dangerousness.

The testimony of the court-appointed psychiatrist, Dr. Bornstein, who diagnosed defendant's condition as a manic-depressive illness, was essentially consistent with the evaluation and opinion of Dr. Pai. He concluded that there was no value in prolonging the defendant's in-patient hospitalization and similarly recommended that he be conditionally discharged subject to the suggested restrictions of Dr. Pai.

Dr. Bornstein also admitted that it was difficult to predict the dangerous propensity of a given individual with total preciseness. He testified, however, that there are certain indicators which are useful in predicting the dangerousness of a person. He noted that the defendant's age, the absence of past manifestations of violent tendencies or behavior (with the exception of the homicide) and his expressed desire to return to society were all positive factors indicative of a nondangerous person. His marital relationship (divorced) was the sole negative factor. Dr. Bornstein concluded the defendant's profile approximated that of a nondangerous person.

The State concurred in defense counsel's recommendation that defendant be discharged subject to the conditions that he (1) reside with his mother; (2) continue out-patient care; and (3) continue participation in an A.A. program. The trial court, in denying the petition for discharge, concluded that the evidence failed to clearly or convincingly establish that the defendant was no longer in need of mental treatment or that there was a reasonable assurance for the safety of the public.

Before proceeding to a review of the trial court's decision, we note in passing the incongruity of the position of the State taken before the trial court and the stance taken before this court. Logic and the principles of reasoned advocacy would seemingly demand that the State not be allowed to argue that the court's denial of conditional discharge should be upheld when the exact opposite posture was taken before the trial court. In any event, we must determine, apart from the inconsistency of the State's position, whether the conclusion of the trial court can be sustained under the present record. We conclude that it cannot.

Where a defendant has petitioned for discharge, the burden of proof and of going forth with the evidence rests with the defendant. The findings of the court must be supported by clear and convincing evidence. Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—4(g).

The trial court, in denying the petition, found that the defendant was still in need of mental treatment. This conclusion is supported by the clear weight of the evidence inasmuch as both psychiatrists recommended that the defendant, if released, continue consultation with local mental health personnel. However, under the Code, an individual's need for continuing mental treatment does not necessarily preclude his discharge subject to specific conditions. Section 5—2—4(i) provides:

"(i) If the court does *not* so find [that the defendant is no longer in need of mental treatment], it may order * * * discharge or release under such conditions * * * imposed by the court which reasonably assure the defendant's satisfactory progress in treatment or habilitation and for the safety of the defendant and

others." (Emphasis added.) Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—4(i).

It was clear from the testimony of both psychiatrists that further institutional or in-patient care of the defendant would be of no benefit to him and was not necessary for his continued progress in treatment and habilitation.

The trial court found, however, that the evidence had not clearly established reasonable assurances for the safety of the public. The psychiatrists were of the opinion that the defendant did not possess a propensity for recurrent violent behavior, based on their observations of the defendant and applying the factors they considered indicative of a dangerous individual. No evidence in contradiction to these opinions was offered.

The court, nevertheless, found this testimony short of clear and convincing, apparently in part because of the witnesses' reluctance to guarantee that the defendant would remain nondangerous or nonviolent. In response to the trial court's reasoning, we note language from a recent Illinois Supreme Court opinion concerning the standard of proof of "dangerousness" required for a *commitment* proceeding. The court stated that:

> "Predictions of dangerousness can hardly be beyond a reasonable doubt in the undeveloped framework of the science of psychiatric diagnosis and prediction, for the subjective determinations therein involved are incapable of meeting objective certainty." (*In re Stephenson* (1977), 67 Ill. 2d 544, 555-56, 367 N.E.2d 1273, 1277.)

By analogy, psychiatric predictions that a person is not dangerous are similarly not required to be beyond a reasonable doubt. Although the court acknowledged that proof beyond a reasonable doubt was not required, by seeking guarantees from the psychiatrists, it demanded as much.

■■ In denying the petition, the court also indicated that it was not satisfied that the proposed conditions of release were sufficient to ensure public safety. In reviewing the court's judgment, we are mindful that it is the trier of fact who makes the final decision in these cases and not the psychiatrist. (*In re Stephenson* (1977), 67 Ill. 2d 544, 367 N.E.2d 1273.) The court may consider and give weight to evidence other than the testimony of the experts including the conduct of the defendant which was the subject of his criminal prosecution. (*People v. Turner* (1978), 62 Ill. App. 3d 782, 379 N.E.2d 377.) Nevertheless, we believe the trial judge erroneously, but in good faith, placed greater emphasis on his own determination that the proposed conditions would not or could not be

complied with satisfactorily, to the exclusion of adequate consideration of the expert testimony.

For example, the court expressed doubt that the defendant could refrain from drinking despite his desire to do so. This was certainly a valid and serious concern for the court in view of the evidence that defendant's abuse of alcohol may have in part prompted or contributed to his psychotic behavior. Nevertheless, the evidence demonstrated that the defendant had not consumed alcohol for the duration of his hospitalization and had not been on medication for 8 months. Both psychiatrists testified that the longer a person remained abstinent the more likely he would remain so in the future.

In addition, it was specifically recommended that defendant's discharge be conditioned upon his continued participation in an A.A. program. Thus, even if the court's fear concerning the defendant's willpower was well-founded, the judge's reaction in denying a conditional discharge overlooked the utility of subsection (j) of section 5—2—4. This provision allows the court to subsequently modify the terms of a conditional release, including remanding him to an institutional facility, where it becomes necessary for the defendant's treatment or the safety of others. The court's implicit reasoning that the safety of others cannot be adequately assured since the conditions of discharge *might* be violated, seemingly defeats the legislative objective that the court retain jurisdiction over, and the power to monitor, the release of an individual still in need of some mental treatment.

In much the same vein, the court questioned the advisability of releasing defendant to the custody of his mother. The court expressed concern that the defendant's mother would be too biased to act in the defendant's or the public's best interest in the event of a relapse of his condition. He doubted whether she would be either able or willing to contact the appropriate mental health authorities if the need arose. The court relied in part on the statement of Dr. Bornstein that it was sometimes possible for a relationship to develop between therapist and patient which could partially obscure the therapist's objectivity. The court reasoned that a mother, therefore, would have even less objectivity as to her son. We note, however, that the Code explicitly contemplates the release of an individual to the custody of his family as an alternative of conditional discharge. (Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—4(i).) Further, no evidence was presented showing that the mother could not competently perform this monitoring function and, in any event, the monitoring of defendant's condition was not to be totally entrusted to the mother.

Finally, the court expressed a reluctance to rely on the evidence that the defendant was responding well to his treatment. In effect, the court

reasoned that the defendant's conduct within this confined and restricted environment, although perhaps indicative of recovery, would be an unreliable guide in predicting his behavior in the unstructured and problematic atmosphere facing him upon release. This analysis, however, results in a self-fulfilling predicament or a type of "catch-22" paradox for the defendant. In other words, because of the sterility of the hospital environment, the defendant's behavior in the real world remains uncertain and because of this uncertainty he must remain hospitalized. Again, the court appears to have overlooked the appropriateness, under the circumstances here, of a conditional release. Admittedly, some uncertainty may persist with respect to the defendant's future behavior. As we noted, however, the state of the science itself is imprecise and psychiatrists can simply not be expected to act as prophets of the vagaries of the human mind. In view of the witnesses' uncontradicted opinions, the restrictions of a conditional discharge would permit a reasonable method of evaluating the defendant's ability to functionally return to society while maintaining adequate assurances for the safety of others.

■■ The trial judge, throughout the hearings and proceedings on this matter, persistently set forth what he perceived to be the role of the court in discharge proceedings. He expressed the concern that the court should not passively or blindly accept the recommendations of the experts or the parties, including the State. The court's effort to actively and carefully scrutinize the psychiatric testimony and the proposed dispositions is commendable and we believe in accord with the objectives of section 5—2—4. Although we are sensitive to the concerns expressed by the trial court, we conclude, nevertheless, that the trial court misconstrued the standard and applicability of a conditional discharge under the present facts. We believe the record here (the psychiatric testimony and the defense counsel's proposed conditions for discharge which were concurred in by the State) clearly established *reasonable assurances* for the safety of others. Accordingly, we conclude that the evidence was clear and convincing and warranted a disposition of conditional release.

The order of the trial court is, therefore, reversed and this cause remanded with directions that defendant be released under such terms and conditions as the court shall determine to be appropriate.

Reversed and remanded with directions.

CRAVEN and TRAPP, JJ., concur.