THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIAM GANN, Petitioner-Appellant.

First District (5th Division)    No. 79-380

Opinion filed April 3, 1981.

James J. Doherty, Public Defender, of Chicago (Marc Fogelberg, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr and Joel A. Stein, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE MEJDA delivered the opinion of the court:

This is an appeal from the denial of the discharge petition of William Gann, who had been acquitted of murder by reason of insanity and committed to the Illinois Department of Mental Health and Developmental Disabilities. We affirm.

Petitioner raises two issues on appeal: (1) whether the trial judge erred in denying conditional discharge to the petitioner on the basis of the record before him; and (2) whether the trial judge has the authority to order the Illinois Department of Mental Health and Developmental Disabilities to test petitioner for alcohol-induced psychosis.

Petitioner was charged with the murders of Alvin Sharp and Ernest Liebsch. Petitioner stabbed Sharp and Liebsch in an unprovoked attack on November 25, 1973. A bench trial was held on February 17, 1977. The evidence adduced at trial showed petitioner had a past, recurring history of violence. In 1953 petitioner was sentenced to the Indiana Department of Corrections for assault with a deadly weapon. In 1959 during divorce proceedings, petitioner took a sheriff's gun and threatened those in the courtroom for which he was subsequently sentenced to 8 years' imprisonment. While imprisoned, he was transferred to a hospital within the Indiana Department of Mental Health, from which he was eventually discharged on August 22, 1966. Ten months later, in June 1967, petitioner was charged with assault with a deadly weapon. He was acquitted by reason of insanity and committed to the Indiana Department of Mental Health. Over the protest of the treating physicians, he was discharged in December 1970.

Petitioner also offered into evidence the stipulated testimony of Dr. Robert Reifman, assistant director of the Psychiatric Institute of the Circuit Court of Cook County. Dr. Reifman had examined petitioner five times during the period from April 1974 through March 1976. Dr. Reifman consistently diagnosed petitioner as suffering from "schizophrenic reaction, paranoid type symptomatized by delusion." In addition to the stipulated testimony of Dr. Reifman, petitioner offered into evidence the stipulated testimony of four other psychiatrists, two medical doctors, one of whom specialized in neuropsychology, and a psychologist, who had all diagnosed petitioner as schizophrenic. Based on the stipulated evidence presented, the court found petitioner not guilty by reason of insanity; that he had not recovered and was in need of mental treatment. Commitment followed. In November 1978, petitioner requested a hearing for discharge pursuant to section 5—2—4 of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—4(e)).

The discharge hearing was held on February 15, 1979, before the trial judge who found petitioner not guilty by reason of insanity and who committed him. Petitioner offered into evidence the testimony of two

psychiatrists, Dr. Garth Smith and Dr. Dusan Gojkovich, in support of his discharge petition.

Dr. Smith had interviewed petitioner once, in November 1978. The interview lasted approximately 30 minutes. Dr. Smith had not examined previous psychiatric reports concerning petitioner prior to the interview. The only information available to Dr. Smith regarding petitioner prior to the interview was that petitioner had been found innocent of murder by reason of insanity and had requested discharge from the hospital; and that he had been a good patient with no problems and was on no medication. Based on his single interview with petitioner only and not on other psychiatric reports, Dr. Smith testified that petitioner was a paranoid personality, but was not psychotic. On direct examination Dr. Smith testified that the probability that petitioner would injure himself or others did not greatly differ from any other person. On cross-examination respondent posed a hypothetical question to Dr. Smith which incorporated the facts of petitioner's murder offense as well as the diagnoses by several doctors that petitioner was schizophrenic. In response to the hypothetical, Dr. Smith could give no opinion as to whether petitioner would be dangerous in the future.

Dr. Gojkovich had interviewed petitioner on several occasions beginning in 1975. He last interviewed petitioner one week prior to the discharge hearing. Although Dr. Gojkovich had not read the transcript from petitioner's murder trial, he was aware that petitioner had stabbed two people to death and that he had previously shot another; that since 1952 he had been in need of emotional support or treatment, and that approximately 10 years previously he had been given electric shock treatments. Dr. Gojkovich consistently diagnosed petitioner as having a paranoid personality disorder. Following his last interview of petitioner, he concluded that petitioner was free of any active or acute mental disorder requiring treatment in a hospital environment, although he believed petitioner would benefit from supervised release. Dr. Gojkovich testified that people with paranoid personality disorders were prone to act out under stress, especially when under the influence of alcohol. In response to a question posed on direct examination as to the propensity of a person with a paranoid personality to be dangerous to others, Dr. Gojkovich testified that such a determination must be made on an individual basis. It was Dr. Gojkovich's opinion that petitioner was vulnerable. Should petitioner become intoxicated and provoked simultaneously, petitioner might more probably react than others. Dr. Gojkovich noted, however, that petitioner had a trouble-free record during his confinement in the hospital. Dr. Gojkovich also speculated that petitioner might have killed Sharp and Liebsch due to a pathological reaction to alcohol, a very unusual condition, although petitioner had never been diagnosed as

suffering from this condition nor even tested for it. Dr. Gojkovich concluded that petitioner presently had fully recovered from any emotional or mental disorder or was in full remission.

Dr. Robert Reifman, whose stipulated testimony was offered into evidence by petitioner at his murder trial, testified for the State at the discharge hearing. Dr. Reifman last interviewed petitioner on December 13, 1978, approximately two months prior to the discharge hearing. The purpose of the examination which had been ordered by the court was to determine petitioner's current need for mental treatment. In Dr. Reifman's opinion, petitioner was delusional, suffering from schizophrenia paranoid type and was still in need of mental treatment. Dr. Reifman believed that there was a high degree of probability that petitioner would violently react under stressful circumstances in the foreseeable future and was still a danger to others. In making his diagnosis, Dr. Reifman had considered petitioner's previous history of violence, elicited during his interviews with petitioner.

Following the presentation of evidence and the arguments of counsel, the trial court denied the petition for discharge. The court based its decision on the following: (1) that the stipulated facts and evidence in the record showed that petitioner killed two people but was psychotic at the time of the occurrence; (2) that at least five psychiatrists had previously diagnosed petitioner as psychotic; (3) that at the time of his bench trial and prior to that time petitioner had a history of both psychosis and acts of violence; (4) that petitioner has been with the Department of Mental Health and had not demonstrated in that controlled environment any specific acts of violence; (5) that unresolved possibilities remained, however; should he be released the precipitating mental conditions bringing about his prior acts of violence could occur again such as alcohol; (6) that even though petitioner was still in or may be in remission, the underlying psychosis still exists; and (7) therefore, petitioner would reasonably be expected to be dangerous within a reasonable time. Petitioner appeals.

OPINION

Petitioner has sought discharge pursuant to section 5—2—4 of the Unified Code of Corrections. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—2—4.) That section governs the proceedings for the commitment, discharge or conditional discharge of a defendant who has been acquitted of a felony by reason of insanity. However, subsequent to the denial of the defendant's discharge petition by the trial court, section 5—2—4 of the Unified Code of Corrections was amended, effective September 19, 1980, by Pub. Act No. 81-1497, 1980 Ill. Legis. Serv. 2277 (West). Subsection (1) of the 1980 amendment specifically provides that it shall apply to all persons who have been found not guilty by reason of insanity and "who are

presently committed to the Department of Mental Health and Developmental Disabilities." (Pub. Act No. 81-1497, §5—2—4(1), 1980 Ill. Legis. Serv. 2281 (West).) The 1980 amendment became effective during the pendency of petitioner's appeal to this court of the denial of his discharge petition.

■■ Although under subsection (1) petitioner is an individual included within the scope of persons to whom the amendment is applicable, neither petitioner nor respondent brought the 1980 amendment to the attention of this court, nor argued its applicability to this case. Nevertheless, the general rule applies that where the legislature has amended a law during the pendency of an appeal, the case must be disposed of by the reviewing court under the law as it exists at the time its decision is rendered, and not as it existed at the time the decision was made by the trial court. *Rios v. Jones* (1976), 63 Ill. 2d 488, 348 N.E.2d 825, *appeal dismissed* (1976), 429 U.S. 934, 50 L. Ed. 2d 304, 97 S. Ct. 346.

The briefs filed by both petitioner and respondent in this case referred only to section 5—2—4 as it existed prior to amendment. As the pertinent provisions of the 1980 amendment were not discussed by either party, a review of the relevant provisions of the act as it existed at the time of the discharge hearing and as it is currently in effect is warranted.

Subsection (a) of former section 5—2—4 stated that after a finding or verdict of not guilty by reason of insanity, a hearing had to be held to determine if the defendant was subject to involuntary or judicial admission. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—2—4(a).) Involuntary or judicial admission required more than a showing of mental illness. (*People v. Sansone* (1974), 18 Ill. App. 3d 315, 309 N.E.2d 733.) An explicit medical opinion had to be rendered that based upon the defendant's conduct, it was reasonably expected that he would harm himself or others or would be unable to care for himself. (*People v. Bradley* (1974), 22 Ill. App. 3d 1076, 318 N.E.2d 267.) Thus, an explicit medical opinion regarding the future conduct of the defendant was required. *People v. Williams* (1977), 47 Ill. App. 3d 861, 365 N.E.2d 404.

Under the 1980 amendment, subsection (a) states that after a finding or verdict of not guilty by reason of insanity, the defendant must be ordered to the Department of Mental Health and Developmental Disabilities to determine if he is subject to involuntary admission or in need of mental health services. Within 30 days of the court order, the Department must provide the court with a report of its evaluation. A hearing must then be held by the court to determine if the defendant is: (a) subject to involuntary admission; (b) in need of mental health services on an in-patient basis; (c) in need of mental health services on an out-patient basis; (d) a person not in need of mental health services. If the court finds defendant either subject to involuntary admission or in need of in-patient

mental health services, the court shall order the defendant to a Department facility. If the court finds defendant in need of only outpatient mental health services, then conditional release shall be ordered. If the court finds the defendant not in need of mental health services, the court shall order the defendant discharged. (Pub. Act No. 81-1497, §5—2—4(a), 1980 Ill. Legis. Serv. 2277 (West).) The 1980 amendment specifically defines the terms "subject to involuntary admission" and "in need of mental health services on an inpatient basis," the two classifications by which a defendant may be committed. A person is defined as "subject to involuntary admission" if he has been found not guilty by reason of insanity, is mentally ill and who because of his mental illness is either reasonably expected to inflict serious harm on himself or another in the near future or is unable to provide for his basic physical needs so as to guard himself from serious harm. Pub. Act No. 81-1497, §§5—2—4(a)(1) (A)(i)-(ii), 1980 Ill. Legis. Serv. 2277 (West).

A person "in need of mental health services on an inpatient basis" is defined as a defendant who has been found not guilty by reason of insanity, who is not subject to involuntary admission, but who is reasonably expected to inflict physical harm upon himself or another and would benefit from or is in need of in-patient care. Pub. Act No. 81-1497, §5—2—4(a)(1)(B), 1980 Ill. Legis. Serv. 2278 (West).

Subsection (e) of the prior law allowed a defendant who had been so committed to file a petition for discharge in the court which rendered the verdict. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—2—4(e).) Similarly, section 5—2—4 as amended allows a defendant admitted pursuant to the section to file a petition for discharge or for conditional release. Pub. Act No. 81-1497, §5—2—4(e), 1980 Ill. Legis. Serv. 2280 (West).

Subsection (h) of the prior law stated that if the court found that the defendant was no longer subject to involuntary or judicial admission, it was to order the defendant's discharge from the facility in which he had been committed. Ill. Rev. Stat. 1979, ch. 38, par. 1005—2—4(h).

The standards for the discharge or conditional release of a defendant under the 1980 amendment are set forth in subsections (b) and (h). Under subsection (b) a court may conditionally release a defendant even if it finds the defendant subject to involuntary admission or in need of inpatient mental health services. (Pub. Act No. 81-1497, §5—2—4(b), 1980 Ill. Legis. Serv. 2278 (West).) Under subsection (h) the defendant must be discharged if the court finds he is no longer in need of mental health services. A court shall conditionally release a defendant if it determines that the defendant is in need of mental health services, but no longer requires in-patient care. Pub. Act No. 81-1497, §5—2—4(h), 1980 Ill. Legis. Serv. 2280 (West).

Thus, under both the prior act and the 1980 amendment, the condi-

tional release of a defendant who is subject to involuntary admission is discretionary with the trial court.

Under both the prior law and the 1980 amendment the burden of proof and the burden of going forward with the evidence rest on the defendant who has petitioned for discharge. Furthermore, the findings of the court under both must be established by clear and convincing evidence. Ill. Rev. Stat. 1979, ch. 38, par. 1005—2—4(g); Pub. Act No. 81-1497, §5—2—4(g), 1980 Ill. Legis. Serv. 2280 (West).

Petitioner concedes in his brief that the trial court correctly denied him absolute discharge. Petitioner asserts, however, that the failure of the trial court to grant him conditional discharge was erroneous. Petitioner's assertion must fail, however, whether the record in the instant case is considered in light of the provisions of section 5—2—4 as that section existed at the time of the discharge hearing or as currently amended. Petitioner acknowledges that the testimony of Dr. Reifman would have been sufficient to deny the petition but contends that the trial court rejected Dr. Reifman's testimony while accepting the testimony of Dr. Smith and Dr. Gojkovich. Petitioner also contends that he was only denied conditional discharge because the trial court believed his possible use of alcohol upon release would render him psychotic and dangerous. Petitioner argues that to deny conditional discharge on the belief that a condition such as abstinence from alcohol might be violated is improper, relying on *People v. Blumenshine* (1979), 72 Ill. App. 3d 949, 391 N.E.2d 232.

■■ In the instant case petitioner's contentions are not supported by the record. Although expressing concern that upon release petitioner could resume using alcohol, the trial court did not solely predicate its denial of petitioner's discharge on this basis. In rendering its denial the trial court articulated several factors on which it based its decision. The court pointed to the stipulated facts and evidence in the record relating to petitioner's murders of Sharp and Liebsch. Such evidence is highly relevant to the issue of the reasonable expectation of petitioner's dangerousness. (*In re Stephenson* (1977), 67 Ill. 2d 544, 367 N.E.2d 1273.) The court noted that at least five psychiatrists had previously diagnosed petitioner as psychotic. The court also referred to petitioner's long history of violent actions. The court further stated that although petitioner might be in remission, his underlying psychosis still existed, and as a result he could be reasonably expected to be dangerous within a reasonable time. Clearly the court based its decision in large part on a finding that petitioner still suffered from an underlying psychosis and was dangerous and did not deny discharge solely on petitioner's possible future use of alcohol. Therefore, petitioner's contention that the denial of his petition was predicated on the possible violation of a future condition is without merit.

■■ The trial court's finding that petitioner's underlying psychosis still existed indicates that far from disregarding the testimony of Dr. Reifman, as petitioner next contends, the court relied upon it in reaching its decision. Of the three psychiatrists testifying at the hearing, only Dr. Reifman diagnosed petitioner as currently suffering from schizophrenia, paranoid type, in need of mental treatment and dangerous to others. Dr. Smith and Dr. Gojkovich found that petitioner had a paranoid personality, but was not psychotic. Dr. Gojkovich further stated petitioner was either cured or in full remission. While Dr. Gojkovich did testify that petitioner was vulnerable to future violent reaction, Dr. Smith could give no opinion as to petitioner's future dangerousness. Thus, despite petitioner's contention, the record indicates that the trial court did indeed rely on Dr. Reifman's testimony as to petitioner's existing psychosis and dangerousness. As petitioner himself acknowledges in his brief, such testimony was sufficient to deny petitioner's discharge petition.

Finally, petitioner relies on *People v. Blumenshine* (1979), 72 Ill. App. 3d 949, 391 N.E.2d 232, in support of his contention that it was error to deny him conditional discharge on the basis of a possible violation of the condition of alcohol abstention. *Blumenshine* is not dispositive in this case not only because we have already determined that the court did not predicate its denial on the violation of a condition, but also because petitioner's reliance on it is misplaced.

In *Blumenshine*, a petition for conditional discharge was filed on behalf of a defendant who had been found not guilty of murder by reason of insanity and subsequently committed. The evidence before the court consisted of the testimony of the treating psychiatrist and the court-appointed psychiatrist. It was the opinion of both psychiatrists that the defendant did not require in-patient treatment. Both agreed that he should be conditionally discharged, subject to follow-up treatment at a local health center which had agreed to treat him. Several specific conditions of his release were suggested to the court, including that defendant continue participation in an Alcoholics Anonymous program, that he reside with his mother, and that he continue out-patient care. Both psychiatrists diagnosed defendant as a nondangerous person. The State concurred in the recommendation that the defendant be conditionally discharged. No evidence was offered contradicting the opinions of the psychiatrists as to the defendant's nondangerousness or ability to comply with the conditions of release. Despite the uncontradicted evidence before it, the trial court denied the discharge. The appellate court reversed, stating that the record in the case, including the psychiatric testimony and the defense counsel's proposed conditions for discharge with which the State concurred, clearly established assurances for the safety of others, was clear and convincing, and warranted discharge.

Obviously, the record established in *Blumenshine* is factually distinguishable from that in the instant case. First, in *Blumenshine* there was no medical opinion that the defendant was either dangerous or unable to care for himself. In fact, there was uncontradicted testimony that he was not dangerous and should be released. Thus, defendant established by uncontradicted evidence that he was no longer subject to involuntary admission. In the instant case there was testimony elicited from Dr. Reifman that petitioner was in need of mental treatment and could reasonably be expected to be dangerous in the future and from Dr. Gojkovich that he was vulnerable to future violent reactions. Thus, unlike that in *Blumenshine*, the record established in the instant case shows that petitioner, under either the standards set forth in section 5—2—4 as it existed at the time of the hearing or as amended, is still subject to involuntary admission.

■■ Secondly, in *Blumenshine*, defendant's treating psychiatrist, the court-appointed psychiatrist, and the State agreed that the defendant should be released. No evidence was offered showing defendant to be dangerous or indicating he would violate the condition of his discharge. There, the trial court's decision to deny conditional release because it would be violated was unsupported by the record. In the instant case there is no consensus among the experts testifying that petitioner should be released. One psychiatrist testified petitioner was in need of mental treatment and could be expected to be violent in the future. A second psychiatrist testified that petitioner was vulnerable to future violence. The third psychiatrist could give no opinion as to future violence. The State opposed discharge. This is unlike the record before the court in *Blumenshine*. The burden rests on petitioner to establish his right to a discharge by clear and convincing evidence. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—2—4(g); Pub. Act No. 81-1497, §5—2—4(g), 1980 Ill. Legis. Serv. 2280 (West).) The record in this case fails to demonstrate that he met this burden. Therefore, the trial court did not err in denying a conditional discharge.

Lastly, petitioner requests that should this court find conditional discharge unwarranted on the record, the case be remanded with directions that the trial court order the Department of Mental Health and Developmental Disabilities to determine if alcohol was the precipitating factor when petitioner murdered Sharp and Liebsch. Petitioner cites *People v. Valdez* (1980), 79 Ill. 2d 74, 402 N.E.2d 187, in support. The State contends, however, that although the trial court has the authority to order the Department to implement a specific treatment plan for a patient (Ill. Rev. Stat. 1979, ch. 38, par. 1005—2—4; Pub. Act No. 81-1497, §5—2—4, 1980 Ill. Legis. Serv. 2277 (West); *People v. Valdez*), it would be improper for the court to order the testing requested by petitioner.

The State asserts that such testing does not constitute treatment but borders on experimentation. The State further asserts that such testing would be irrelevant, as Dr. Gojkovich admitted that whether he diagnosed petitioner as having an adverse reaction to alcohol or as a paranoid personality, alcohol abstinence would be recommended.

■■ Both petitioner and the State are correct that the trial court in a proper case may, according to *Valdez*, direct a treatment program for a patient. However, the record in the instant case supports the State's contentions. Certainly, diagnostic testing to determine the current mental condition of a patient so that his needs may be properly addressed could be considered part of a treatment program. However, petitioner requests that this testing be done not to establish current needs, but to establish, if that is even possible, his mental condition at the time of the murders. The record does not even indicate that petitioner had consumed any alcohol at the time of the murders. The only evidence adduced in the record to suggest that petitioner suffered from alcohol-induced psychosis at the time of the murders was the testimony of Dr. Gojkovich, who ultimately described his suggestion as mere conjecture. Dr. Gojkovich currently diagnosed petitioner as a paranoid personality, whose psychosis was fully cured or in full remission. Dr. Gojkovich would recommend alcohol abstention to the petitioner in any event.

There is nothing in the record then to suggest that the tests petitioner seeks are needed or warranted.

Therefore, for the reasons stated herein, the order of the trial court is affirmed.

Affirmed.

LORENZ and WILSON, JJ., concur.