THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RONALD HOFFMANN, Defendant-Appellant.

First District (3rd Division)   No. 84—1751

Opinion filed February 5, 1986.

Wahler, Pecyna & Fleming, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Peter D. Fischer, and Edward V. Edens, Assistant State's Attorneys, of counsel), for the People.

JUSTICE WHITE delivered the opinion of the court:

Defendant Ronald Hoffmann appeals from the trial court's denial of his petition for release or conditional discharge from the Illinois Department of Mental Health and Developmental Disabilities (Department of Mental Health).

The record reveals that in 1973 defendant was diagnosed as suffering from paranoid schizophrenia and placed on a treatment program. In July 1978, contrary to his doctor's advice, defendant discontinued his treatment program and stopped taking his medication.

Approximately four months later, defendant shot and killed Emanuel Dahl and Sophie Schwarz in two unrelated and unprovoked attacks. Subsequently, defendant was charged with two counts of murder in two separate indictments. By order of court, two psychiatrists examined defendant and found him not fit to stand trial and in need of mental treatment. He was then placed in the custody of the Department of Mental Health.

In a hearing on November 18, 1980, defendant was found fit to stand trial, and after a bench trial he was acquitted of both murders by reason of insanity. The trial court entered an order finding defendant in need of mental treatment and committed him to the Department of Mental Health for inpatient mental treatment until further order. Defendant was placed with the Elgin Mental Health Center (Elgin Center), a facility within the Department of Mental Health system.

On June 2, 1983, pursuant to the request of the Department of Mental Health, the court entered an order allowing defendant four weekend passes. On November 28, 1983, defendant filed a petition for discharge or conditional release pursuant to section 5—2—4(e) of the Unified Code of Corrections (Ill. Rev. Stat. 1983, ch. 38, par. 1005—2—4(e)) alleging that he was no longer subject to involuntary admission and that a hearing should be held to determine his eligibility for discharge from the Department of Mental Health.

A hearing on the petition was held on May 30, 1984. In support of his petition for discharge, defendant offered into evidence the testimony of two certified psychiatrists, Dr. Allen Cunnie and Dr. Edith Hartman. Dr. Cunnie testified that in 1983 he interviewed and examined defendant for the purpose of determining whether defendant was eligible for outpatient treatment. He testified further that in 1984, pursuant to defendant's request, he examined and interviewed defendant, reviewed defendant's psychiatric records, and spoke with defendant's treating physician to prepare to testify as to his opinion of defendant's mental condition. Based on his observations, Dr. Cunnie found that defendant was suffering from paranoid schizophrenia in remission, and that it was essential that defendant take Navane, his antipsychotic medication. On cross-examination, Dr. Cunnie revealed that defendant had an alcohol abuse disorder that was also in remission. He added that should defendant resume drinking alcohol, it would interfere with his medication and defendant would lose control. He stated further that defendant distrusted psychiatrists and that defendant had the ability to conceal symptoms of his illness. Although Dr. Cunnie stated that he could give no opinion as to whether defend-

ant would be dangerous to himself or others in the near future, he concluded that defendant was an eligible candidate for outpatient treatment.

Dr. Hartman, defendant's current treating psychiatrist at the Elgin Center, testified next. She stated that in 1979, as a staff psychiatrist at the Illinois State Psychiatric Institute (ISPI), she treated defendant and evaluated his fitness to stand trial for the two killings. Dr. Hartman again came in contact with defendant in 1982 as his treating psychiatrist at the Elgin Center. There she diagnosed defendant as suffering from paranoid schizophrenia, but concluded that he was no longer psychotic. She testified that during defendant's confinement at the Elgin Center, he cooperated very well and had on-ground privileges. However, she revealed that recently defendant had become more argumentative to conversational remarks and had exhibited a more guarded, nervous and tense behavior. Dr. Hartman stated that, as a precautionary measure, she increased defendant's dosage of Navane in March 1984 to give him a better stress tolerance. Under cross-examination, she revealed that in 1984 defendant experienced tremendous stress when he participated in weekend home visits. It was Dr. Hartman's opinion that with medication and outpatient supervision, defendant could be rehabilitated and become a member of the community.

Dr. Werner Tuteur, a court appointed, certified psychiatrist, and Elizabeth Morrison, a clinical social worker, both testified for the State in opposition to defendant's petition for discharge.

Dr. Tuteur examined defendant on three occasions: December 1983, and February and May 1984. Dr. Tuteur reviewed reports of other doctors' examinations of defendant and defendant's psychiatric records for the purpose of determining whether defendant should be treated as an outpatient or allowed home visits. On the basis of his observation, he diagnosed defendant as suffering from psychosis and paranoid schizophrenia, in partial remission. Dr. Tuteur testified that in his opinion, defendant should not be treated as an outpatient, nor should he receive off-ground passes for home visits. He based his conclusion on: defendant's longstanding schizophrenic illness, approximately 10 years; his on-going inadequacy; defendant's on-going sensitivity toward others' harmless conversational remarks; violence-oriented remarks made by defendant to other persons, to wit, "Do you think I am hallucinating. If you fool with me eighty men will go down." Dr. Tuteur added further that defendant was becoming increasingly unable to deal with the day-to-day stress he faced in the controlled environment of the Elgin Center. He therefore opined that

defendant would be unable to handle the increased stress of an uncontrolled environment. Dr. Tuteur added that: defendant was very careful about what he told his doctors and that this was an indication that there were other impulses deep in his mind which he was guarding; defendant's ability to control these suppressed impulses was very brittle and could break down at any time, particularly if he were placed in the more stressful environment outside the Elgin Center; and defendant remained rigid and guarded with a considerable relapse potential. Dr. Tuteur concluded by explaining that as long as defendant remained psychotic he would continue to be dangerous to himself and others. He therefore believed that defendant remained in need of mental treatment on an inpatient basis.

Morrison testified as an expert in the field of sociology. She conducted a psychosocial evaluation of defendant and his family for the purpose of assessing defendant's family's capacity to receive him into their home and to assist him in rehabilitation. She was of the opinion that defendant's parents' lack of insight into his illness and their high levels of anxiety could be stressful for defendant. Morrison concluded that defendant's family was not capable of assisting him in rehabilitation in their home.

After hearing the testimony, the trial court denied defendant's petition, finding that defendant was not entitled to discharge from the Department of Mental Health. On appeal, defendant argues that the trial court erred in (1) allowing testimony by Dr. Tuteur, (2) allowing the testimony of Morrison, (3) restricting the redirect testimony of Dr. Hartman, and (4) denying his petition for discharge.

Initially, we address the question of whether the trial court erred in allowing Dr. Tuteur, a full-time employee of the Department of Mental Health, to testify at defendant's discharge hearing. After defendant filed his petition for discharge, the State, pursuant to section 5—2—4(f) of the Unified Code of Corrections (Ill. Rev. Stat. 1983, ch. 38, par. 1005—2—4(f)), petitioned the court to order Dr. Tuteur to perform an examination of defendant the results of which were to be considered at his discharge hearing. Defendant raised no objections to the State's request. However, at trial, after stipulating as to Dr. Tuteur's qualifications to testify as an expert in the field of psychiatry, defendant objected to Dr. Tuteur's appointment to the case. Over defendant's objection, the trial court allowed Dr. Tuteur to testify about the results of his examination of defendant.

Defendant charges error in the trial court's action on the basis of section 5—2—4(f), which provides:

"If requested by either the State or the defense or if the

Court feels it is appropriate, an impartial examination of the defendant by a psychiatrist or clinical psychologist as defined in Section 1—103 of the Mental Health and Developmental Disabilities Code who is not in the employ of the Department of Mental Health and Developmental Disabilities shall be ordered, and the report considered at the time of the hearing." (Ill. Rev. Stat. 1983, ch. 38, par. 1005—2—4(f).)

Defendant maintains that this statute requires the appointment of a psychiatrist not in the employ of the Department of Mental Health. We disagree.

■ The court's function in statutory interpretation is to ascertain the intention of the legislature and to give effect to it. (*Interlake, Inc. v. Industrial Com.* (1983), 95 Ill. 2d 181, 447 N.E.2d 339.) The language of the Act is the best source for determining legislative intent. *People v. Rink* (1983), 97 Ill. 2d 533, 455 N.E.2d 64.

■ Under section 5—2—4(f), the State, the defense, and the court each have a statutory right to request that an impartial examination be made of defendant. A reading of the plain language of section 5—2—4(f) indicates that the legislature's purpose in including the description, "a psychiatrist *** who is not in the employ of the Department of Mental Health" is to insure the neutrality of the examining psychiatrist. In the present case, we believe the purpose of the statute was given effect. The record shows that although Dr. Tuteur was the acting principal supervising psychiatric consultant for the Department of Mental Health, he had had no contact with defendant as a patient in the Elgin Center. Additionally, Dr. Tuteur testified that his examination and analysis of defendant were performed incident to his private practice and were in no way influenced by the Department of Mental Health. Upon hearing the above testimony, the trial court concluded that Dr. Tuteur was capable of rendering an independent opinion of defendant's mental condition and allowed him to testify. We find no reversible error in this action.

■ The next issue is whether the trial court erred in allowing Morrison to testify as an expert witness. The trial court ruled that Morrison qualified as an expert witness on the basis of her master's degree in sociology, professional association, and seven years' experience in conducting psychosocial evaluations of individuals and their families for the Cook County Psychiatric Unit. Based on her experience, her review of defendant's medical records and her interview with defendant's parents, Morrison testified as to the capacity of defendant's family to accept him into their home and to assist him

in rehabilitation. It was her opinion that defendant's family lacked adequate insight into defendant's situation and their relationship to it.[1]

Defendant maintains that Morrison should not have been allowed to testify because section 5—2—4(f) limits the testimony at discharge hearings to that of experts in the field of psychiatry and psychology, testifying on issues of mental health, fitness or discharge. As stated earlier, the predominant purpose of section 5—2—4(f) is to allow the court, the defense, and the State the opportunity to request a neutral court witness. The plain language of section 5—2—4(f) in no way limits the type of witness qualified to testify at a discharge hearing. Additionally, we note that "expert testimony is admissible at trial when the subject matter of the inquiry is sufficiently beyond common experience that only persons of skill and experience in the matter are capable of forming a correct judgment as to any connected fact." (*People v. Dixon* (1980), 87 Ill. App. 3d 814, 818, 410 N.E.2d 252.) Generally the "admissibility of expert testimony is to be determined by the trial judge and a wide latitude of discretion is given to the court in the determination of such admissibility, unless it is clearly and prejudicially erroneous." *People v. Oberlander* (1969), 109 Ill. App. 2d 469, 473, 248 N.E.2d 805.

Defendant has shown no such prejudice. Given Morrison's education and qualifications in the field of clinical sociology and her seven years of experience in conducting psychosocial evaluations for the Cook County Psychiatric Unit, we find no error in the court's decision to allow her to testify.

As for the relevance of the testimony tendered by Morrison, we find no error in its admission. The trial court has substantial discretion in ruling on the relevancy of tendered evidence and the reviewing court will not disturb the ruling unless there has been a clear abuse of discretion. (*Needy v. Sparks* (1977), 51 Ill. App. 3d 350, 366 N.E.2d 327.) In the present case, the trial court considered expert testimony regarding similarities between defendant's present mental condition and his mental condition in 1978 when he killed two people. One of the similarities is defendant's continued fear and distrust of his parents.[2] On the basis of this fact, we believe the sta-

---

[1]See footnote 2.

[2]The record shows that at the time defendant killed the victims, he was suffering from an inadequate self-concept which he translated into persecutory projections. He claimed that he was being harassed by the people who lived around him, his neighbors and particularly his parents. He was frightened of his father and believed his mother was poisoning his food.

bility of defendant's family became highly relevant to the issue of whether defendant should be released to the unstructured environment of family life, particularly his family which he feared and distrusted. Accordingly, we find no abuse of discretion in the admission of Morrison's testimony.

■ We turn next to the question of whether the trial court erred in restricting the redirect testimony of Dr. Hartman, one of the experts who testified on behalf of defendant. The State charges that defendant has waived this issue for failure to raise it properly as provided by Supreme Court Rules 341 and 612(i). (103 Ill. 2d R. 341(e)(7); 87 Ill. 2d R. 612(i).) Rule 341(e)(7) reads:

> "Argument, which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on. *** Points not argued are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing."

Rule 612(i) mandates that Rule 341 applies with equal force to criminal appeals.

In his brief, defendant failed to support this issue with any form of authority; nor does he give factual support for his position by citation to the record. This failure rendered it difficult for the State and this court to appropriately respond to that contention. Accordingly, we hold that the issue is waived on appeal.

■ Lastly, defendant contends that the trial court erred in denying his petition for discharge or conditional release from the Department of Mental Health. Defendant filed his petition for discharge alleging that he was no longer subject to involuntary admission. Under the Mental Health and Developmental Disabilities Code, an individual subject to involuntary admission is defined as:

> "A defendant has been found not guilty by reason of insanity; and
>
> (i) who is mentally ill and who because of his mental illness is reasonably expected to inflict serious physical harm upon himself or another in the near future; or
>
> (ii) who is mentally ill and who because of his illness is unable to provide for his basic physical needs so as to guard himself from serious harm." Ill. Rev. Stat. 1983, ch. 38, par. 1005—2—4(a)(1)(A).

It is the burden of the defendant to establish by clear and convincing evidence that he is entitled to discharge or conditional release. (Ill. Rev. Stat. 1983, ch. 38, par. 1005—2—4(g).) Specifically, to establish his entitlement to discharge, defendant must show that he

is no longer reasonably expected to inflict serious harm upon himself or another in the near future. (Ill. Rev. Stat. 1983, ch. 38, pars. 1005—2—4(a)(1)(A)(i) and 1005—2—4(g), (h).) However, to establish his entitlement to conditional release, defendant must not only show that he no longer poses a danger to himself and others but also that he no longer has a need for nor would benefit from inpatient care. Ill. Rev. Stat. 1983, ch. 38, pars. 1005—2—4(g), (h).

In our opinion, defendant has failed to meet his burden. Therefore, it was proper for a trial judge to deny defendant's petition where the evidence established that defendant could be reasonably expected to inflict serious harm upon himself or another if he were discharged or released.

■ It is the trier of fact who is to consider all the evidence and make the final decision. (*In re Stephenson* (1977), 67 Ill. 2d 544, 367 N.E.2d 1273; *People v. Blumenshine* (1979), 72 Ill. App. 3d 949, 391 N.E.2d 232.) In making its decision on the petition, the trial court may consider and give weight to evidence other than the testimony of the experts. (*People v. Blumenshine* (1979), 72 Ill. App. 3d 949, 391 N.E.2d 232.) In this regard the conduct of the defendant which was the subject of his criminal prosecution is highly relevant to the issue of the reasonable expectation of defendant's dangerousness. *People v. Gann* (1981), 94 Ill. App. 3d 1100, 419 N.E.2d 613.

■ In the case at bar, the trial court did not articulate the bases for its denial of defendant's petition. However, the court's denial is amply supported by the evidence adduced at trial. First, the record reveals that the trial court considered substantial evidence regarding similarities between defendant's current mental condition and his mental condition in 1978 when he killed two people. Dr. Hartman, defendant's treating physician, testified that currently defendant had exhibited the same symptoms he suffered from during the time he killed two people. She expounded that defendant had become increasingly anxious, tense, evasive, guarded and argumentative. She explained that he had become increasingly unable to take conversational comments and had continuing problems with social interaction. Dr. Hartman revealed further that defendant experienced tremendous stress during the period in which he participated in weekend home visits. The record presents further evidence of the similarities, namely: his past and present expressed belief that he is no longer mentally ill; his continued belief that he is being persecuted by the people around him; and his continued fear and distrust of his parents. The trial court properly considered the above evidence regarding defendant's present conduct and state of mind as

compared to that which was the subject of his criminal prosecution in 1978. See generally *People v. Nunn* (1982), 108 Ill. App. 3d 169, 438 N.E.2d 1342, and *People v. Gann* (1981), 94 Ill. App. 3d 1100, 419 N.E.2d 613.

The record shows further that the trial judge expressed concern about whether defendant was over-medicated and the effects of his failure to take such medication. Although the court did not base its denial solely on defendant's potential failure to take his medication, we believe the court's concern was warranted by the evidence. (Compare *People v. Nunn* (1982), 108 Ill. App. 3d 169, 438 N.E.2d 1342.) Dr. Tuteur, the court appointed psychiatrist, testified that defendant's psychiatric records indicated that doctors feared the two killings by defendant were a direct consequence of defendant's failure to take his medication. It was also adduced at trial that defendant had taken Navane, his prescribed antipsychotic medication, for approximately 10 years. Dr. Hartman testified that in March 1984, as a precautionary measure, she increased defendant's daily dosage of the drug to give him a better stress tolerance. All three medical experts who testified agreed that it was essential that defendant continue taking his medication. We note that although there is no indication in the record that defendant failed to take his medication at the Elgin Center, the trial court properly considered the evidence in light of defendant's prior failure to take his medication in 1978. *People v. Gann* (1981), 94 Ill. App. 3d 1100, 419 N.E.2d 613.

We find further support for the trial court's decision in the ultimate conclusions and recommendations of the experts who testified. After testifying that defendant was exhibiting symptoms similar to those of 1978, Dr. Hartman concluded that defendant remained a paranoid schizophrenic but that he was no longer psychotic. She recommended conditional release via outpatient treatment for defendant. Dr. Cunnie also recommended outpatient treatment for defendant. He testified that defendant's schizophrenia illness was in remission. He concluded that it was impossible for him to predict with any medical certainty whether or not defendant would become dangerous to himself or others. Contrarily, Dr. Tuteur testified that defendant was suffering from paranoid schizophrenia, in partial remission. He added that defendant still suffered from psychosis and that as long as he did, defendant would continue to be dangerous to himself and others. He therefore recommended that defendant continue to receive mental treatment on an inpatient basis. Similarly, Morrison, the clinical social worker, recommended that defendant not be discharged or conditionally released to the care of his parents

because they were unable to accept him into their home and to assist in rehabilitation.

In considering these conclusions, we are mindful of the fact that although all the psychiatric experts agreed that it was becoming increasingly difficult for defendant to handle stress in the controlled environment of the Elgin Center, there is no consensus among them that defendant should not be released to the uncontrolled and more stressful environment of the outside world. It is the function of the trier of fact, not the psychiatrist, to consider all of the evidence and make the final decision (*In re Stephenson* (1977), 67 Ill. 2d 544, 367 N.E.2d 1273; *People v. Blumenshine* (1979), 72 Ill. App. 3d 949, 391 N.E.2d 232), and where the evidence is conflicting it is within the province of the trier of fact to resolve that conflict. In *People v. Gann* (1981), 94 Ill. App. 3d 1100, 419 N.E.2d 613, there was a similar nonconsensus among the experts on whether or not the defendant should be released. There, the appellate court found that the testimony of the single expert who testified that defendant was suffering from schizophrenia, paranoid type, in need of mental treatment and dangerous to himself and others was sufficient to support the denial of defendant's petition. (94 Ill. App. 3d 1100, 1109, 419 N.E.2d 613.) Likewise we find here that the conclusions of Dr. Tuteur, as well as the majority of the evidence, clearly and convincingly support the court's denial of defendant's petition for discharge and conditional release. *In re Stephenson* (1977), 67 Ill. 2d 544, 367 N.E.2d 1273.

For the reasons stated herein, we affirm the order of the trial court.

Affirmed.

McNAMARA and McGILLICUDDY, JJ., concur.