*In re* COMMITMENT OF MARK RISNER.—(The People of the State of Illinois, Petitioner-Appellee, *v.* Mark Risner, Respondent-Appellant.)

First District (5th Division)   No. 81—2831

Opinion filed November 5, 1982.

Mark J. Heyrman, of Mandel Legal Aid Clinic, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, David Shapiro, and Lu Ann Rodi, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MEJDA delivered the opinion of the court:

This is an appeal from an order of the trial court denying respondent's conditional release from Grasmere Residential Home. We reverse.

Respondent raises three issues on appeal: (1) whether the State proved by clear and convincing evidence that the proposed release plan did not provide reasonable assurances for respondent's further treatment and for the safety of respondent and others; (2) whether the trial court improperly placed the burden of proof on respondent; and (3) whether the trial court erred in failing to require the State to present proof beyond a reasonable doubt that respondent's release was inappropriate.

On January 3, 1979, respondent Mark Risner was found not guilty of murder by reason of insanity and was committed to the custody of the Illinois Department of Mental Health and Developmental Disabilities (the Department) pursuant to section 5—2—4 of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—2—4). The circuit court entered an order on November 6, 1980, conditionally releasing respondent from the Department's custody and requiring him to reside at Grasmere Residential Home and to continue to receive psychotherapy and medication from the Isaac Ray Center, an outpatient psychiatric clinic of Rush-Presbyterian-St. Luke's Medical Center. Respondent began living at Grasmere in January 1981.

On August 19, 1981, the facility director of Grasmere notified the circuit court of her determination that respondent was no longer in need of the structured, supervised setting provided by Grasmere, recommending that he be conditionally discharged into the community, as provided by section 5—2—4(d) of the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, par. 1005—2—4(d)). The proposed release plan provided that respondent would continue psychiatric treatment at the Isaac Ray Center.

The hearing was held on various dates in October and November 1981 before the trial judge who had ordered respondent's conditional release from the Department's custody and subsequent residence at Grasmere. The State's only witness at the hearing was Dr. Gilbert Bogen, staff psychiatrist at the Cook County Psychiatric Institute. Dr. Bogen testified that he examined respondent on October 21, 1981, pursuant to the court's October 13, 1981, order. On direct examination he stated that although he was aware that respondent had earlier been diagnosed as schizophrenic paranoid type, during his October 21 examination he found no evidence of mental illness. He testified further that he found no evidence that respondent would endanger him-

self or others if released to the community and that respondent's continued receipt of antipsychotic medicine and psychotherapy and the Isaac Ray Center's periodic reports to the court provided reasonable assurances that his remission was maintained. Dr. Bogen concluded that respondent could be released from Grasmere to live in the community as long as he remained subject to court supervision. He based his opinion on (1) a July 1981 letter from Dr. Kelly, respondent's psychiatrist, which stated that respondent was in full remission, (2) comments from the Grasmere staff indicating that respondent exhibited no psychotic or depressive symptoms or behavior problems, (3) the August 19, 1981, letter from the facility director of Grasmere recommending respondent's release and continued outpatient treatment, (4) his own examination of respondent which uncovered no evidence of mental illness, (5) the fact that respondent was employed and able to socialize, and (6) respondent's receipt of antipsychotic medication. Dr. Bogen admitted that if respondent stopped receiving antipsychotic medication it was possible that he would again exhibit symptoms of mental illness. He noted, however, that individuals who stop taking such medicine often show signs such as sleeplessness and withdrawal which indicate the recurrence of a psychosis. On cross-examination Dr. Bogen reiterated that the requirements that respondent receive regular therapy and medication from the Isaac Ray Center and that the Center report to the court provided reasonable assurances for respondent's continued treatment and for the safety of respondent and the public.

The State then rested, whereupon respondent moved for judgment, arguing that the State had not met its burden of proof because it failed to show that the release plan did not provide reasonable assurances for the safety of respondent and others and for his continuation in treatment. The court denied respondent's motion.

Four witnesses testified on respondent's behalf. Dr. Jonathan Kelly, a licensed psychiatrist employed by the Isaac Ray Center and the Cook County Psychiatric Institute, stated that he had treated respondent continuously since July 1979. At the time of the hearing he was seeing respondent weekly in outpatient sessions lasting 30 to 45 minutes. Although Dr. Kelly diagnosed respondent's mental state as paranoid schizophrenic, he testified that it was in remission and that he had observed no psychotic symptoms in the two years he had treated respondent. It was Dr. Kelly's opinion that respondent could handle the stress he would encounter while living outside Grasmere without a recurrence of psychosis. Dr. Kelly testified further that respondent was receiving medication, that he had complied with the

terms of his release to Grasmere from the Chicago-Read Mental Health Center, that respondent intended to live with his girlfriend, Lynn Pitkins, upon his release from Grasmere and that medication and treatment would continue after his release. Dr. Kelly concluded that the release plan offered reasonable assurances of continued treatment and rehabilitation of respondent and of the safety of respondent and others.

On cross-examination Dr. Kelly again testified that in his opinion respondent would be able to handle the stress associated with moving out of the structured environment of Grasmere and into the community. He based his opinion on the fact that respondent was able to handle the transition from the inpatient setting of Chicago-Read Mental Health Center to Grasmere and to seek and maintain employment without exhibiting psychotic symptoms. Dr. Kelly stated that even though respondent may be under increased stress after leaving Grasmere, continuation of the antipsychotic medication renders the chance of a recurrence of psychotic symptoms minimal.

Lynn Pitkins met respondent at Chicago-Read Mental Health Center in January 1981 while she was a voluntary patient there. She testified that she knows of respondent's background, that they spend most of their time together, and that they plan to live together after respondent's release from Grasmere. At the time of the hearing Pitkins was undergoing monthly therapy sessions with Dr. Kodish.

Nancy Gardner, intake coordinator and former program coordinator at Grasmere, testified that to her knowledge respondent had never violated any rule or regulation of Grasmere. She stated that at the time of the hearing respondent was no longer participating in the activities at Grasmere because they were designed for residents who need help in structuring their time, that respondent does not need this assistance, and that he works during the day and spends his leisure time away from Grasmere, generally returning to the facility only to sleep and do laundry.

Respondent testified regarding the jobs he had held since his release from Chicago-Read in January 1981. He worked for a short time at a clerical job attaching labels and he later delivered pizza. At the time of the hearing he had been working at a fast food restaurant for about six months and one month earlier had been transferred to a different location and given a raise. Comparing the stress he presently felt with the stress he felt at the time of the killing for which he was acquitted, respondent stated that although he had not been in a sheltered environment since his release from Chicago-Read, he no longer experienced the kind of stress he had had at the earlier time. Re-

spondent expressed his intent to continue therapy and medication with Dr. Kelly after his release from Grasmere.

Following the presentation of evidence, the trial court stated that before ordering respondent's discharge it must receive a letter from Dr. Kodish indicating his understanding of the "condition" of both respondent and Pitkins and giving his opinion regarding whether or not their living together would be appropriate for each of them. The court stated that it would not release respondent from Grasmere unless it was convinced that the release would be beneficial for both respondent and Pitkins.

Pitkins would not consent to having her psychiatrist present a report. Following closing argument, the trial court denied the conditional release of respondent.

OPINION

■■ Respondent has sought a conditional release from the Grasmere Residental Home pursuant to section 5—2—4 of the Unified Code of Corrections. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—2—4.) That section, which governs the proceedings for the commitment, discharge or conditional discharge of a defendant following acquittal of a felony by reason of insanity, was amended by Public Act No. 81—1497, effective September 19, 1980. Subsection (1) of the 1980 amendment specifically provides that it shall apply "to all persons who have been found not guilty by reason of insanity and who are presently committed to the Department of Mental Health and Developmental Disabilities." (Ill. Rev. Stat. 1981, ch. 38, par. 1005—2—4(1).) Because respondent is an individual within the scope of persons to whom the amendment is applicable, this appeal is governed by section 5—2—4 as it existed after the 1980 amendment and at the time of the hearing. *People v. Gann* (1981), 94 Ill. App. 3d 1100, 419 N.E.2d 613.

Respondent first contends that the State failed to prove by clear and convincing evidence that the proposed release plan did not provide reasonable assurances for respondent's further treatment and for the safety of respondent and others. The applicable section of the statute provides that the findings of the court shall be established by clear and convincing evidence and that the burden of proof rests with the State when a hearing is held to review the determination of the facility director that the defendant should be discharged or conditionally released. (Ill. Rev. Stat. 1981, ch. 38, par. 1005—2—4(g); see *People v. Nunn* (1982), 108 Ill. App. 3d 169, 438 N.E.2d 1342; *People v. Czyz* (1980), 92 Ill. App. 3d 21, 416 N.E.2d 1; *People v. Blumenshine* (1979), 72 Ill. App. 3d 949, 391 N.E.2d 232.) Conditional release is de-

fined as "the release from the custody of either the Department of Mental Health and Developmental Disabilities or the custody of the court of a person who has been found not guilty by reason of insanity under such conditions as the court may impose which reasonably assure the defendant's satisfactory progress in treatment or habilitation and the safety of the defendant and others." Ill. Rev. Stat. 1981, ch. 38, par. 1005—2—4(a)(1)(D).

At the hearing the State's only witness, Dr. Bogen, testified that during his examination he found no evidence that respondent is mentally ill or that he would endanger himself or others if released to the community. Dr. Bogen concluded that respondent's continued therapy at the Isaac Ray Center and receipt of antipsychotic medication provided reasonable assurances for his continued treatment and for his safety and the safety of the public. Dr. Bogen admitted that it was possible that respondent would again exhibit symptoms of mental illness if he stopped taking the prescribed antipsychotic medication. He concluded, however, that respondent's testimony and behavior indicated, to a reasonable degree of certainty, that he would continue the medication.

■ Although the burden rests on the State to establish, by clear and convincing evidence, that respondent's release does not meet the statutory standard, the State presented no evidence tending to show that the release was inappropriate. On the contrary, we note that all testimony before the trial court evidenced respondent's progress since his commitment to the custody of the Department and his compliance with the treatment program. The State's witness, respondent's psychiatrist, and the professional staff of Grasmere concurred in the facility director's recommendation that respondent be conditionally released. Based on the record before us, there can be no finding supported by clear and convincing evidence that the proposed release plan did not provide reasonable assurances for respondent's further treatment and for the safety of others.

Although the above conclusion is dispositive of this appeal, we will briefly examine the remaining issues raised by respondent.

■ We agree that the trial court erroneously placed the burden of proof on respondent by requiring him to produce a letter of approval from Pitkins' psychiatrist, Dr. Kodish. The statute provides specifically that where, as in the instant case, the release plan is proposed by the facility director, the State bears the burden of proving the release plan inappropriate. (Ill. Rev. Stat. 1981, ch. 38, par. 1005—2—4(g).) In the instant case, placing the burden on respondent to prove that the release plan met the statutory standard was an improper as-

signment of the burden of proof. Where the facility director proposes conditional release of a defendant found not guilty by reason of insanity, the State must prove that the proposed release plan does not meet the statutory standard. The respondent is not required to prove that the release is appropriate.

Although the State argues that the court's request of a letter from Dr. Kodish was merely an inquiry regarding the safety of respondent and others (Ill. Rev. Stat. 1981, ch. 38, par. 1005—2—4(a)(1)(D)) and was a permissible consideration of evidence in addition to expert testimony (*In re Stephenson* (1977), 67 Ill. 2d 544, 367 N.E.2d 1273), it is clear that the court conditioned respondent's release on its receipt of a letter from Dr. Kodish approving respondent's living arrangements. We conclude, therefore, that the trial court improperly placed the burden of proof on respondent.

Finally, respondent contends that the trial court erred in failing to require the State to present proof beyond a reasonable doubt that the release plan was inappropriate. As previously stated, under the statute, proof by clear and convincing evidence is the standard used in considering the discharge of persons who were previously found not guilty by reason of insanity. (Ill. Rev. Stat. 1981, ch. 38, par. 1005—2—4(g); see *In re Stephenson*; *People v. Gann* (1981), 94 Ill. App. 3d 1100, 419 N.E.2d 613.) The trial court applied the correct standard.

For the foregoing reasons, the order of the circuit court is reversed.

Reversed.

SULLIVAN, P.J., and WILSON, J., concur.