THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* MICHAEL SMITH, Respondent-Appellant.

First District (1st Division)   No. 83—1379

Opinion filed July 3, 1984.

6

Edwin F. Mandel Legal Aid Clinic, of Chicago (Mark J. Heyrman, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Jane E. Liechty, and Pamela Martin, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GOLDBERG delivered the opinion of the court:

Michael Smith (defendant) was charged with arson. On September 27, 1982, he was found not guilty by reason of insanity. He has since remained confined at Manteno Mental Health Center (Manteno). After a hearing concluded on May 20, 1983, the trial court ordered defendant to undergo inpatient care and treatment under the direction of the Illinois Department of Mental Health and Development Disabilities. The order of the trial court did not specify a determinate duration for the commitment. Defendant appeals.

Dr. Robert Wettstein, a fully qualified consulting psychiatrist for the Illinois Department of Mental Health, testified he examined defendant four times and observed defendant interact with other individuals on numerous occasions at Manteno. The witness knew that defendant "had a history of psychotic symptoms" including making sexual advances to siblings and urinating on the floor. Defendant denied the incidents to the witness. The witness was also aware of defendant's "history of drug abuse." The witness stated that defend-

ant's expression of personal feelings was infantile, and he showed little insight into his past or current mental problems. Although the witness concluded defendant has "shown very little motivation for outpatient treatment," the witness recommended that defendant be treated on an outpatient basis at a facility other than Manteno. Manteno has neither a drug abuse program nor drug abuse counselors. Defendant has not received any medication there. The clinic at Loretto Hospital, which has a drug abuse program, has accepted defendant for outpatient treatment.

The witness further testified he has not heard of any instances in which defendant has threatened, hurt, or made sexual advances to any person at Manteno for the four months defendant was there. In the expert opinion of the witness, defendant "does not need and would not benefit from further hospital treatment," and is "not currently suffering from mental illness." Defendant's condition is, "atypical psychosis in remission." Defendant's drug abuse has contributed to his previous psychotic episodes. The doctor also believed defendant had a "mixed personality disorder" which is categorized by a number of antisocial features and difficulty in dealing with some of his feelings, including anger. The witness did not know defendant's mental disorder to exhibit itself in violence. The fire defendant started was the result of "his atypical psychosis as a result of drug abuse and not as a result of his personality problem." The witness concluded that it was certainly possible that if defendant again used drugs his atypical psychosis could re-emerge.

David Das, a qualified expert psychologist at Manteno, testified he interviewed defendant on several occasions. In his expert opinion defendant did not meet the statutory requirements for involuntary commitment. He "certainly" agreed with Dr. Wettstein that defendant should not be hospitalized but should instead be treated on an outpatient basis. The witness also testified "if there were excessive use of drugs, [defendant's] past mental condition, psychotic condition, is likely to recur."

On examination by the court, the witness stated the cause of defendant's psychosis is not exactly known but, in the opinion of the witness, "drugs and alcohol can cause an exacerbation of psychosis." Furthermore, the stresses of life outside Manteno could disturb defendant. However, outpatient counselling could help defendant through his difficulties. Also, defendant does not meet the statutory requirement for involuntary admission. At present, he is not a danger to himself or others, but he should be released only with "close monitoring." In addition, the witness knew that defendant had previously

been treated at Loretto Hospital.

Patricia Perry, a social worker at Manteno, testified she planned the discharge of defendant should he be released for outpatient treatment. Defendant would live with his family and receive outpatient treatment at Loretto Hospital. She believed defendant was a proper candidate for outpatient treatment from the time he was first admitted to Manteno. She believed strict supervision by defendant's family is the only way to monitor defendant's use of alcohol and drugs, should defendant be released.

The witness never personally observed any behavioral problems with defendant. The only problem of which she was aware during defendant's stay at Manteno was an instance of gambling with other residents. The witness did not believe defendant should reside at a "halfway house" because the residents there are generally older than defendant and subject to chronic mental illness.

Connie Pokalsey, a psychologist at Manteno, testified she has interviewed defendant. She led the treatment team for defendant. She concurs with the recommendation of Dr. Wettstein that defendant should be treated on an outpatient basis.

Alice Smith, defendant's mother, testified she was aware of defendant's previous mental and behavioral problems. Nevertheless, she was willing for defendant to live with her and four of her other children. She is employed and is generally away from home from 10 a.m. to 8:30 or 9 p.m.

The trial judge entered an order remanding defendant to the custody of the Department of Mental Health. The order specified that defendant was not subject to involuntary commitment but that defendant was in need of mental health services on an inpatient basis.

The controlling statute provides in pertinent part (Ill. Rev. Stat. 1983, ch. 38, par. 1005—2—4(a)(1)(B), (g):

> "(B) 'In need of mental health services on an inpatient basis' means: a defendant who has been found not guilty by reason of insanity who is not subject to involuntary admission but who is reasonably expected to inflict physical harm upon himself or another and who would benefit from inpatient care or is in need of inpatient care.

> \* \* \*

> (g) The findings of the court shall be established by clear and convincing evidence. The burden of proof and the burden of going forth with the evidence rest with the State when a hearing is held to review the determination of the facility director that the defendant should be discharged or conditionally released."

■ The State has the burden of proving defendant must remain in custody for involuntary inpatient treatment by clear and convincing evidence. (Ill. Rev. Stat. 1983, ch. 38, par. 1005—2—4(g); *In re Stephenson* (1977), 67 Ill. 2d 544, 556, 367 N.E.2d 1273.) Furthermore, "the finding must be based upon an 'explicit medical opinion regarding the [defendant's] future conduct, and can not be based upon a mere finding of mental illness.' " *People v. Czyz* (1980), 92 Ill. App. 3d 21, 25, 416 N.E.2d 1, quoting *People v. Sansone* (1974), 18 Ill. App. 3d 315, 323, 309 N.E.2d 733, 739, *appeal denied* (1974), 56 Ill. 2d 584.

■ Expert testimony that defendant may have difficulty adjusting to the stresses of noninstitutional life is not sufficient to sustain a finding requiring involuntary commitment. (*People v. Czyz* (1980), 92 Ill. App. 3d 21, 26-27.) Neither is the possibility that defendant may not comply with the prescribed regimen of treatment (*People v. Nunn* (1982), 108 Ill. App. 3d 169, 174, 438 N.E.2d 1342), nor that defendant may resume abuse of alcohol (*People v. Blumenshine* (1979), 72 Ill. App. 3d 949, 954, 391 N.E.2d 232).

In *Blumenshine*, the court reasoned (72 Ill. App. 3d 949, 954):

"The court's implicit reasoning that the safety of others cannot be adequately assured since the conditions of discharge *might* be violated, seemingly defeats the legislative objective that the court retain jurisdiction over, and the power to monitor, the release of an individual still in need of some mental treatment."

In *Blumenshine*, we reversed the decision of the trial court denying defendant's release. We held (72 Ill. App. 3d 949, 953-54):

"In denying the petition, the court also indicated that it was not satisfied that the proposed conditions of release were sufficient to ensure public safety. In reviewing the court's judgment, we are mindful that it is the trier of fact who makes the final decision in these cases and not the psychiatrist. [Citation.] The court may consider and give weight to evidence other than the testimony of the experts including the conduct of the defendant which was the subject of his criminal prosecution. [Citation.] Nevertheless, we believe the trial judge erroneously, but in good faith, placed greater emphasis on his own determination that the proposed conditions would not or could not be complied with satisfactorily, to the exclusion of adequate consideration of the expert testimony."

Similarly, in *In re Commitment of Risner* (1982), 110 Ill. App. 3d 368, 373, 442 N.E.2d 541, we held:

"Although the burden rests on the State to establish, by clear

and convincing evidence, that respondent's release does not meet the statutory standard, the State presented no evidence tending to show that the release was inappropriate. On the contrary, we note that all testimony before the trial court evidenced respondent's progress since his commitment to the custody of the Department and his compliance with the treatment program. The State's witness, respondent's psychiatrist, and the professional staff *** concurred in the facility director's recommendation that respondent be conditionally released. Based on the record before us, there can be no finding supported by clear and convincing evidence that the proposed release plan did not provide reasonable assurances for respondent's further treatment and for the safety of others."

In the case at bar, the State's witnesses unanimously recommended that defendant be released from custody to permit outpatient treatment. The legitimate concern of the careful trial judge as to the degree of supervision required for defendant is based on the "implicit reasoning" that the conditions of release *"might* be violated," which is not sufficient to mandate commitment. *People v. Blumenshine* (1979), 72 Ill. App. 3d 949, 954.

Furthermore, in each of the above cases, *Risner, Nunn, Czyz* and *Blumenshine,* we reversed the trial court's determination that the respective defendants should remain in custody for treatment. In *Risner, Czyz* and *Blumenshine,* the defendants had originally been acquitted of murder by reason of insanity. In *Nunn,* the defendant was similarly acquitted of kidnaping a police officer. These defendants had shown specific propensities toward violent crimes. In the case at bar, defendant was charged with arson of a vacant building. Although representing a potential danger to the public, this situation does not contain the same dangerous propensities as the conduct of the defendants in the cited cases.

However, the situation presented by this record is unusual. Granted that defendant should ideally be treated on an outpatient basis, the fact remains that it appears totally unacceptable and even dangerous for defendant to be given his immediate and full release. As shown, defendant would be obliged to live with his mother and four young children. The mother is necessarily employed and she is away from home from 10 a.m. to at least 8:30 p.m. The record before us does not indicate that a specific and detailed program for defendant's outpatient treatment has been established. In our opinion, these facts make it extremely hazardous to permit defendant to live at home until such time as the question of outpatient treatment is fully

resolved and ready for application.

Consequently, we have concluded that the best interests of this young man for his future welfare require that a plan be carefully devised to outline the program which would be available to establish outpatient treatment for defendant at Loretto Hospital. According to the testimony of Dr. Wettstein, Loretto Hospital could and would offer a definite course of outpatient treatment. If this can be done we would have more confidence in permitting the defendant to live at home as long as he was receiving frequent outpatient treatments and thus a degree of supervision at Loretto together with his residence in his own home.

■ Therefore the cause is remanded to the trial court with specific directions that the order appealed from be modified to require that Department of Mental Health submit to the trial court, with all possible speed, and no later than 30 days from the date of filing of this opinion, a complete treatment plan for defendant as an outpatient in Loretto Hospital. Upon approval of such plan by the trial court, defendant is to be then forthwith released to his own home for simultaneous outpatient treatment.

Remanded with directions.

BUCKLEY, P.J., and CAMPBELL, J., concur.