THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHNNIE GRANT, Defendant-Appellant.

First District (2nd Division)   No. 1—96—4353

Opinion filed March 24, 1998.

RAKOWSKI, J., specially concurring.

Mark J. Heyrman, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Janet Powers Doyle, and Michele Grimaldi Stein, Assistant State's Attorneys, of counsel), for the People.

JUSTICE TULLY delivered the opinion of the court:

The facility director of the Illinois Department of Mental Health and Development Disabilities (hereinafter Department), Nancy Staples, recommended in writing to the trial court that defendant, Johnnie Grant, be conditionally released pursuant to section 5—2—4(d)(2) of the Unified Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, par. 1005—2—4(d)(2) (now 730 ILCS 5/5—2—4(d)(2) (West 1996))). The trial court denied the recommendation for defendant's conditional release. It is from this order that defendant now appeals pursuant to Supreme Court Rule 301 (155 Ill. 2d R. 301).

For the reasons that follow, we reverse and remand with directions.

The pertinent facts are as follows. Defendant was charged with murder. On July 13, 1987, defendant killed a random person who was walking out of a grocery store because, according to defendant, the victim was a Federal Bureau of Investigation agent who was after him. It was discovered that defendant suffered from mental illnesses and was taking antipsychotic medication. At the time of the murder, however, defendant had stopped taking his medication and, as a consequence, suffered delusions that the victim was out to get him and defendant had to kill him.

On September 12, 1989, after a bench trial, defendant was found not guilty of murder by reason of insanity. The trial court determined that defendant was in need of inpatient psychiatric care. Thus, defendant was committed to the custody of the Department as required by section 5—2—4(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, par. 1005—2—4(a) (now 730 ILCS 5/5—2—4(a) (West 1996))) and placed at the Elgin Mental Health Center (hereinafter Elgin). Defendant is a NGRI (not guilty by reason of insanity) patient. NGRI patients are also known as forensic patients.

Defendant was diagnosed as having paranoid schizophrenia, an incurable disease which may be controlled by medication. In November of 1993, the facility director of the Department recommended that defendant be conditionally released. The trial court denied the recommendation after a hearing. On December 6, 1995, a new facility director, Nancy Staples, of the Department recommended that defendant be conditionally released. However, no hearing was scheduled within the required 30 days. See Ill. Rev. Stat. 1985, ch. 38, par. 1005—2—4(d) (now 730 ILCS 5/5—2—4(d) (West 1996)). Therefore, on January 24, 1996, Ms. Staples again sent a letter to the trial court recommending that defendant be conditionally released. A hearing was then held November 8, 1996, nine months later. The record is unclear as to why the hearing was not scheduled within the required 30 days.

Defendant presented three witnesses—Dr. Philip Pan, Dr. Bernard Block, and Ruby Lee Wilson—at the hearing on November 8, 1996, to show why he should be conditionally released. The State did not present any witnesses. The first witness, Dr. Pan, was a staff forensic psychiatrist for the forensic clinical services at the Isaac Ray Center who had been working there since August of 1996. Dr. Pan admitted that he reviewed only some of defendant's records, specifically the records between May 1996 and August 1996. Dr. Pan testified that he reviewed reports from two other psychiatrists. In addition, in August of 1996, Dr. Pan conducted a single interview which lasted less than two hours. Based upon his review of this medical information, Dr. Pan concluded that defendant was stable, not suffering from antipsychotic symptoms, and suitable for conditional release. Dr. Pan further testified, within a reasonable degree of medical certainty, that defendant did not pose a threat to himself or others.

In addition, Dr. Pan testified that if defendant were conditionally released, defendant would reside at the Somerset House, an intermediary care facility for psychiatric patients and other forensic patients. The Somerset staff is experienced in dealing with forensic patients, such as defendant, and is responsible for administering the

required medication to the patients. According to Dr. Pan, defendant would also be receiving outpatient psychiatric treatment at Isaac Ray Center, vocational training at the Jewish Vocational Service, and other counseling at the Community Counseling Center of Chicago.

Upon cross-examination, Dr. Pan testified that he was unaware that in 1993 a prior conditional release recommendation for defendant was denied by the trial court. Dr. Pan acknowledged that defendant may have continuing problems with ineffective coping skills, wherein he may not deal well with stress and other problems, but noted upon redirect examination that this is not unusual. When questioned by the court as to the type of conduct a person may exhibit if he or she is unable to deal with stress, Dr. Pan responded that defendant could become violent or catatonic. Defendant's counsel inquired about defendant's decompensation in early 1994. Dr. Pan explained that defendant suffered from a decompensation as a result of acute stress caused by his involvement with a woman patient at Elgin. Consequently, his off-ground privileges were suspended and his medication doses were increased, of which Dr. Pan was unaware. Dr. Pan acknowledged that defendant desires to be released and is motivated by his desire, but all the documentation demonstrates that defendant has been compliant with treatment.

Defendant then presented his second witness, Dr. Bernard Block, a staff forensic psychiatrist who treated defendant for the past 5½ years. Dr. Block agreed with Dr. Pan that defendant should be conditionally released and that defendant is not a danger to himself or others. In his testimony, Dr. Block explained that defendant suffered a "distortion in thought process marked primarily by delusions of paranoia with the fantasy that the government was seeking to harm him or arrest him." In essence, defendant was diagnosed as a paranoid schizophrenic, in remission since May of 1994. Defendant had been taking his medications since the 1970s and had been taking injectable medication, Haldol, every 28 days since he came to Elgin. Dr. Block mentioned that defendant "ha[d] been a very good, very cooperative patient," emphasizing that defendant had been compliant in taking his treatment.

Defendant met with Dr. Block twice a month for approximately 40 to 60 minutes. Defendant also received treatment from the Isaac Ray Center and had never missed an individual or a group session. Dr. Block testified that defendant had not experienced a severe behavioral problem in the previous 5½ years, other than the decompensation in 1994 precipitated by a romantic involvement with a female patient, which Dr. Block considered a mild incident. In Dr. Block's opinion, any situation with anxiety for a paranoid schizo-

phrenic is referred to as a "decompensation." As a result of this non-serious decompensation, defendant's unsupervised off-grounds privileges were suspended, his dosages of medication were increased, and he was counseled for impulsive judgment and suspiciousness. Dr. Block opined that this incident was not evidence that defendant's relationship to women would lead to violence. Dr. Block maintained that defendant should be conditionally released.

On cross-examination, Dr. Block was questioned about the defendant's act of smuggling drugs into Elgin prior to 1993. He explained that he did not believe this incident should affect the outcome of whether defendant should be conditionally released, although Dr. Block acknowledged it was a problem. Dr. Block was also asked whether he recommended defendant's conditional release in 1993 knowing that defendant's symptoms were not in remission, even though defendant was on medication. Responding that he knew defendant's symptoms were not in remission, Dr. Block emphasized that defendant's problems "were treated even though they [were] not currently active" and did not believe defendant to be a danger to himself or others. In addition, Dr. Block testified on cross-examination that defendant had no coping problems with staff or other patients, just with certain women who "press attentions on him." Dr. Block stated that he did not agree with a nurse's notes from June 1996 which stated that defendant had an ongoing problem with ineffective coping skills, and he also disagreed with a May 6, 1994, report from another doctor stating that defendant had "numerous indications of cognitive slippage and distortions of thinking." According to Dr. Block, these were not the judgment or prognosis of the treatment teams. In fact, he noted that defendant's degree of anxiety or depression was a common symptom, not significantly different from the anxiety and depressions that ordinary nonpsychotic people have. Dr. Block also stated that although he believed that defendant's motivation in complying with his treatment came from his desire to be released conditionally, his motivation also stemmed from wanting to be a "non-mentally ill person."

The third witness defendant presented was Ruby Lee Wilson, the program director at Isaac Ray Center, a licensed registered nurse, and an ordained minister. Isaac Ray Center is an organization affiliated with the department of psychiatry at Rush-Presbyterian-St. Luke's Medical Center. In her testimony, Wilson stated that Isaac Ray Center's function is to evaluate and treat the NGRI patients, act as a barrier between the patients and the community and to ensure that a patient remains on the path of recovery from mental illnesses.

Wilson testified that since January of 1995, she had met with de-

fendant twice a month in individual therapy and twice a month in group therapy. According to Wilson, she was responsible for monitoring defendant, and any violations of the conditional release would be reported to the court. She explained that the Somerset House was responsible for administering defendant's medication. At the time she gave her testimony, Wilson worked with 46 other patients who had been charged with murder but were acquitted by reason of insanity. According to Wilson, defendant "is extremely conscientious and is always very compliant *** and comes to Isaac Ray Center now unsupervised and unescorted." She further stated that defendant demonstrated concern for the family of his victim and regularly expressed a desire to someday return to work.

Wilson further testified that the Isaac Ray team, which was comprised of one psychiatrist, one psychologist, and herself, believed defendant was ready for conditional release. Wilson stated that defendant came to Isaac Ray unaccompanied and had never missed or been late for a counseling session, never had any type of complaint against him, and was not a problematic patient. She emphasized that it is not often that a patient does not take his medication. However, if that were to happen, Wilson explained the procedures and action she would take. She also testified as to her duties to defendant and the court, both legally and ethically.

At the conclusion of the hearing, the trial court denied the recommendation for defendant's conditional release. The trial court believed that the recommendation was brought forth by defendant himself, although it stated that it would hold the State to the burden of proof. The trial court was convinced that defendant still had problems, still had ineffective coping skills, had possible problems with stress, and found the staff's observations more reliable than those of defendant's own doctors and treatment teams. The trial court stated that it wanted assurances that defendant would not act violently if faced with a stressful situation, essentially switching the burden from the State to defendant. It also stated "they [the State] have not met their burden by clear and convincing evidence, but I think by a preponderance of the evidence, if not more. This court is going to deny Mr. Grant's request for conditional release." Subsequently, defendant filed a motion for reconsideration, which was also denied.

On appeal, defendant argues that the trial court erred by shifting the burden of proof to defendant, thereby contradicting the statute, which explicitly calls for the State to bear the burden of proof. Defendant further argues that the trial court improperly denied defendant's conditional release, in light of explicit medical opinion supporting conditional release and no evidence presented by the State. Finally,

defendant maintains that the trial court improperly asked for reassurances from defendant's witnesses that he would be able to handle stressful situations if conditionally released.

Defendant first argues that the trial court applied the wrong burden to the wrong party. At the end of the hearing, the trial judge said "they [the State] have not met their burden by clear and convincing evidence, but I think by a preponderance of the evidence, if not more. This court is going to deny Mr. Grant's request for conditional release." Thus, defendant claims that the trial judge applied a preponderance of evidence standard, instead of a clear and convincing standard, and essentially placed the burden on defendant instead of the State.

■ Section 5—2—4(g) of the Unified Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, par. 1005—2—4(g) (now 730 ILCS 5/5—2—4(g) (West 1996))) states, in pertinent part:

"The findings of the court shall be established by clear and convincing evidence. The burden of proof and the burden of going forth with the evidence rest with the State when a hearing is held to review the determination of the facility director that the defendant should be transferred to a non-secure setting, discharged or conditionally released. The burden of proof and the burden of going forth with the evidence rest on the defendant when a hearing is held to review a petition filed by or on behalf of such defendant." 730 ILCS 5/5—2—4(g) (West 1996).

In this case, the facility director for the Department, Nancy Staples, had sent a letter to the trial judge on December 6, 1995, pursuant to section 5—2—4(d), recommending that Johnnie Grant be conditionally released, as he was no longer subject to involuntary admission or in need of inpatient treatment. The record on appeal shows that no hearing was scheduled. The facility director sent a second letter to the trial judge on January 24, 1996, again requesting a hearing for defendant for a conditional release. The hearing was scheduled for November 8, 1996. At the hearing, the burden was on the State to prove, by clear and convincing evidence, that defendant should not be conditionally released.

■ The State erroneously argued in its appellate brief that defendant had the burden since defendant brought forth a petition for conditional release on July 24, 1996, pursuant to section 5—2—4(e). We note that Nancy Staples' letter was not initially in the record on appeal filed on February 21, 1997; however, the letter was filed in a supplemental record on April 1, 1997. The State overlooked the supplemental record on appeal and conceded during oral arguments on December 2, 1997, that it was in error, whereupon the State filed

another supplemental record, which included both letters and defendant's petition for conditional release, on December 16, 1997. The State requested that this court grant a new hearing. The State claimed it was confused as to who had the burden at the November 8, 1996, hearing and believed defendant had the burden since defendant filed a petition for conditional release, not the facility director. The record is unclear as to what type of hearing it was; nevertheless, we believe that two separate hearings should have taken place, one on the basis of Staples' recommendation and one for defendant's petition. However, the transcripts reveal that the trial judge initially placed the burden on the State to prove by clear and convincing evidence that defendant should not be discharged. Therefore, we can assume that the trial judge held the hearing based on the facility director's recommendation. Moreover, the record clearly shows that the State assumed the burden, where the prosecutor told the trial judge "I assume the burden." Accordingly, we believe that there was no question as to who had the burden of proof nor can the State now claim that it did not know it had the burden. We are not persuaded by the State's reliance on *People v. Cross* to support its argument that if the State had known it had the burden, the State would have put forth different evidence or trial strategy. See *People v. Cross*, 289 Ill. App. 3d 876, 891 (1997) (where the trial court remanded the case for a new hearing because the defendant was not aware that he had the burden of proof and would have put forth different evidence or trial strategy had he been so apprised). We find no reason to remand this case for a new hearing. We further find that the trial judge was initially correct in applying the clear and convincing standard on the State, but later relied on the wrong standard in its conclusion.

■ Having determined that, we now examine whether the State showed that defendant should not be conditionally released by clear and convincing evidence. Under section 5—2—4(h), the State needs to show that defendant (1) was subject to involuntary admission, or (2) in need of mental health services on an inpatient basis. Section 5—2—4(h) provides, in pertinent part:

> "If the Court finds that the defendant is in need of mental health services, and no longer in need of inpatient care, it shall order the facility director to release the defendant under such conditions as the Court deems appropriate \*\*\*. \*\*\* If the Court finds that the defendant is subject to involuntary admission or in need of mental health services on an inpatient basis, it shall order the facility director not to discharge or release the defendant \*\*\*." 730 ILCS 5/5—2—4(h) (West 1996).

"Subject to involuntary admission" means that the party who has the

burden of proof must show that the defendant is mentally ill and because of his mental illness is either reasonably expected to inflict serious physical harm upon himself or another in the near future *or* is unable to provide for his basic physical needs. 730 ILCS 5/5—2—4(a)(1)(A) (West 1996). "In need of mental health services on an inpatient basis" means a defendant who is not subject to involuntary admission but who is reasonably expected to inflict serious physical harm upon himself or another and who would benefit from inpatient care or is in need of inpatient care. 730 ILCS 5/5—2—4(a)(1)(B) (West 1996). The State must prove that defendant is subject to involuntary admission or is in need of mental health services on an inpatient basis by clear and convincing evidence. 730 ILCS 5/5—2—4(g) (West 1996). Furthermore, the finding must be based upon an explicit medical opinion regarding the defendant's future conduct and cannot be based upon a mere finding of mental illness. See *People v. Smith*, 126 Ill. App. 3d 5, 9 (1984).

■ After a careful review of the record, we find that Dr. Pan's testimony, corroborated by Dr. Block's testimony, clearly showed that defendant was not a danger to himself or to others, nor was their testimony contradicted by the State. Dr. Block's testimony consisted of explicit medical opinions that defendant's mental illnesses had been in remission since 1994. Dr. Block had been defendant's psychiatrist for over 5½ years, and defendant had no physical altercations or behavioral problems during that time. According to the doctor, defendant suffered a decompensation in 1994, but it was minor and not an unusual symptom for a paranoid schizophrenic. Dr. Block stressed that defendant had never missed his medication or any therapy session and had been compliant with his treatment program. Defendant continued to improve through his individual and group sessions. The record demonstrated that defendant was a good and cooperative patient and quite capable of providing for his basic physical needs. For instance, defendant went to counseling at Isaac Ray Center unaccompanied. Most importantly, the State did not exercise its right to request an independent psychiatric evaluation, nor did it call any qualified expert witnesses. No one disputed that defendant needed counseling and guidance to continually improve his coping skills; however, the witnesses explained that he did not need inpatient mental health services. In sum, there was no clear and convincing evidence that proves there is a reasonable expectation that defendant would inflict serious harm upon himself or others. All three witnesses testified that defendant was suitable for conditional release. Thus, we believe the State failed to meet its burden of proving defendant was not suitable for conditional release.

A case directly on point is *People v. Nelson*, 244 Ill. App. 3d 356 (1993). In the *Nelson* case, the defendant, while suffering from paranoid schizophrenia exacerbated by substance abuse, killed his girlfriend. After a trial, the defendant was found not guilty of murder by reason of insanity on June 24, 1981. *Nelson*, 244 Ill. App. 3d at 357. The defendant received more than 10 years of psychological treatment on an inpatient basis. In 1991, the facility director recommended that the defendant be conditionally released. *Nelson*, 244 Ill. App. 3d at 357. The trial court denied the director's recommendation because it erroneously believed that it was the defendant's burden to prove by clear and convincing evidence that he was not a danger to others, which the defendant failed to do. *Nelson*, 244 Ill. App. 3d at 357. The appellate court reversed the trial court after finding that section 5—2—4(g) explicitly states that it is the State's burden, not the defendant's, to bring forth clear and convincing evidence that the facility director's recommendation for conditional release is inappropriate. *Nelson*, 244 Ill. App. 3d at 357.

The appellate court in *Nelson* was not persuaded by the State's arguments. Although the defendant previously threatened staff members verbally, physically injured a patient and allegedly had a physical altercation with a staff member, the witnesses, who were qualified experts who evaluated the defendant, testified that the defendant was not a danger to himself or others as long as he took his medication. The defendant had not acted violently or been involved in any physical altercation for more than seven years and had not made verbal threats for more than two years prior to the hearing. The qualified expert witnesses testified that when the hospital tried taking the defendant off his medication it resulted in the defendant verbally threatening a staff member. *Nelson*, 244 Ill. App. 3d at 359-60, 363-64. The State presented no evidence to substantiate the report, no evidence of physical altercation within seven years of the hearing, and no evidence of verbal altercations within two years of the hearing. *Nelson*, 244 Ill. App. 3d at 364. Similarly, in our case, three witnesses testified that defendant was suitable for conditional release and was not a danger to himself or others. The State did not present clear and convincing evidence to the contrary. Accordingly, we find that the State failed to meet its burden.

■ Defendant next contends that the trial court erred in denying his conditional release and asking defendant's witnesses for guarantees or assurances that defendant would not act in a violent manner when faced with stressful situations. The trial judge specifically said:

"Nobody could tell me that if the stress was there the Haldol at

this level is enough to keep him from acting violent. This is the assurance that I need to determine whether or not he is at risk to be put back into an environment without controls, without an inpatient controlled situation. \*\*\* And when he stops taking his medication he suffers from paranoia. \*\*\* What I'm really concerned about is what can happen while he is on medication? And nobody has given me any degree of assurance of any reasonable degree of medical scientific certainty what would happen if he is faced with a stressful situation while, if, he is on a conditional release situation even though he is on Haldol. \*\*\* Until there is [*sic*] no episodes of decompensation, until there is [*sic*] no episodes of him not being able to cope with stress, until I feel that he is a safety risk to then filter back into society where he will be facing stressful situations every day, the stress of standing in line in a grocery store, the stress of traffic, the stress of being denied something that he feels he is entitled to, stress of having a curfew, stress of dealing with the opposite sex in which we know he has a problem. Those are all things that this court cannot deny. All of this was developed by the State on cross-examination of these doctors. They have not met their burden by clear and convincing evidence, but I think by a preponderance of the evidence, if not more. This court is going to deny Mr. Grant's request for conditional release."

We again turn to the *Nelson* case. The trial court, whose decision was later reversed, relied heavily on the experts' statements that they could not guarantee that the defendant would continue to take his medication or that he would not resume the use of illegal drugs. The appellate court quoted *People v. Smith*, 126 Ill. App. 3d 5, 9 (1984), in its opinion:

"Expert testimony that defendant may have difficulty adjusting to the stresses of noninstitutional life is not sufficient to sustain a finding requiring involuntary commitment. [Citation.] Neither is the possibility that defendant may not comply with the prescribed regimen of treatment [citation], nor that defendant may resume abuse of alcohol." *Smith*, 126 Ill. App. 3d at 9.

We agree with this reasoning. A court should not postulate that the safety of others cannot be assured because defendant *might* violate certain conditions of his discharge. The trial judge may not place "greater emphasis on his own determination that the proposed conditions would not or could not be complied with satisfactorily, to the exclusion of adequate consideration of expert testimony." *People v. Blumenshine*, 72 Ill. App. 3d 949, 953-54 (1979). The proposed release plan and treatment plan should provide sufficient assurances for defendant's further treatment and progress.

The trial court improperly requested assurances from defendant's

counsel and defendant's witnesses that defendant would not harm himself or others if confronted with stressful situations. We do not find that the possibility of defendant having difficulty adjusting to the stresses of noninstitutional life is sufficient to sustain a denial of conditional discharge. Everyone faces stress on a daily basis. Defendant has been learning to deal with stress and other emotions through the therapy sessions and counseling programs. In addition, he continued to be on medication that was proven to be successful in keeping his mental illnesses in remission. Furthermore, there was no evidence that defendant could be reasonably expected to harm himself or others. Defendant's doctors and treatment team all agreed that defendant should be conditionally released. In light of all of this evidence and none to the contrary, we find all this testimony and evidence to be sufficient to grant defendant's conditional release.

On a final note, we requested information and a report of defendant's current condition during oral arguments. We received the most recent 60-day reports (August 1997 and October 1997) and find that defendant is stable, has greater coping skills, and is ready for conditional release. He participates in weekly individual and group psychotherapy sessions in order to further enhance his coping skills. The report does not state that defendant has suffered any decompensation or has exhibited any problems. If defendant is conditionally released, he will be placed at the Somerset House and receive outpatient mental health services at the Isaac Ray Center. We remand for the entry of an order permitting the hospital to conditionally release defendant "under such conditions *** as will reasonably assure the defendant's satisfactory progress in treatment *** and the safety of the defendant or others." 720 ILCS 5—2—4(a) (West 1996).

For the reasons stated above, we reverse the trial court's denial of defendant's conditional release and order the trial court to conditionally release defendant and further remand this cause for proceedings consistent with the views contained herein.

Reversed and remanded with directions.

COUSINS, J., concurs.

RAKOWSKI, J., specially concurring:
I do not join in the findings of the majority that "defendant is stable, has greater coping skills, and is ready for conditional release." 295 Ill. App. 3d at 761. Rather, I concur based upon the unrebutted opinions of Doctors Block and Pan.

I concur in all other respects.